*521
 
 OPINION OF THE COURT
 

 Simons, J.
 

 Respondent is the Surrogate of Fulton County and petitioner the attorney for an estate being processed in respondent’s court. In January 1992 the executor submitted a petition for a final settlement of its account accompanied by waivers executed by all interested parties. Because respondent questioned some items in the account and petitioner’s fees for services, he ordered a hearing
 
 sua sponte
 
 to inquire into those questions. After the hearing commenced, petitioner instituted this CPLR article 78 proceeding seeking an order prohibiting respondent from continuing the hearing and an order of mandamus compelling him to issue a decree settling the accounts.
 

 The issue presented is whether respondent acted in excess of his powers as Surrogate by ordering the inquiry when no interested party objected to settlement of the executor’s accounts or the attorney’s fee. Supreme Court held that respondent had and accordingly granted petitioner the relief
 
 *522
 
 requested and ordered respondent to enter a decree settling the accounts. The Appellate Division modified by reversing those parts of the judgment which prohibited an inquiry into attorney’s fees and directed entry of a decree awarding counsel the requested fee. On cross appeals to this Court, we conclude that a Surrogate has the power to initiate an inquiry into the propriety of accounts presented for settlement and the reasonableness of the legal fees charged the estate. We, therefore, modify the order of the Appellate Division and dismiss the petition.
 

 I
 

 Heinz Schmidt died testate a resident of Johnstown, New York, in June of 1987. He left an estate valued at approximately $1 million, the largest part of it represented by stock in Pepsico. His last will and testament, after making several specific bequests, created a residuary trust and directed that the income be distributed to Daniel Hannis during his life and then to the Johnstown Senior Citizens Club. If the Club ceased to exist, the income was to be distributed to the City of Johnstown. Schmidt’s will named Norstar Bank of Upstate New York (now Norstar Trust Company) as executor and trustee. Norstar hired petitioner Stortecky, the attorney who had drafted Schmidt’s will, to represent it in the probate of the will and the administration of the estate.
 

 Upon completion of its duties, Norstar submitted to the court a petition for judicial settlement of the final account of Schmidt’s estate. The submission included waivers executed by the bank as executor, all trust beneficiaries, and the Attorney-General on behalf of charitable interests. The parties executing the waivers acknowledged that they personally appeared in the proceedings, waived issuance and service of a citation and consented that a decree be entered settling the executor’s accounts. The waivers expressly recited that the petition sought executor’s commissions in the amount of $36,105.55 and counsel fees of $41,000 plus disbursements.
 

 After reviewing the accounting, respondent requested petitioner to produce certain vouchers and statements, the estate checkbook and an affidavit of legal services rendered. Petitioner submitted some of the documents and the requested affidavit. That information failed to overcome the Surrogate’s reservations, however, and, in May 1992, he issued an order
 
 sua sponte
 
 scheduling an evidentiary hearing and directing
 
 *523
 
 the executor and attorney to appear with their books and records. The order itemized the subjects to be addressed at the hearing, listing various dispositions of Schmidt’s property, the manner in which the executor’s commission was computed, and the reasonableness of attorney’s fees. Beneficiaries of the estate were advised that they could attend. After one day of hearings, petitioner commenced the instant proceeding seeking orders of mandamus and prohibition. Supreme Court granted the petition.
 
 *
 

 II
 

 Prohibition is an extraordinary remedy, available only where there is a clear legal right to relief because a trial court has proceeded without jurisdiction or is "exceeding its authorized powers in a proceeding over which it has jurisdiction”
 
 (La Rocca v Lane,
 
 37 NY2d 575, 578-579;
 
 see also, Matter of Holtzman v Goldman,
 
 71 NY2d 564, 569;
 
 Matter of Rush v Mordue,
 
 68 NY2d 348, 353). It does not lie as a means of seeking collateral review of mere trial errors or procedures regardless of how egregious they might be
 
 (La Rocca v Lane, supra,
 
 at 579).
 

 The Constitution grants Surrogate’s Court jurisdiction over "all actions and proceedings relating to the affairs of decedents, probate of wills [and] administration of estates” (NY Const, art VI, § 12 [d]) and authorizes the court to exercise such equity jurisdiction as provided by law in fulfilling those responsibilities
 
 (see,
 
 NY Const, art VI, § 12 [e];
 
 see also,
 
 SCPA 201). Respondent clearly had subject-matter jurisdiction in this case pursuant to the Constitution and the statutory powers granted Surrogate’s Court by the Legislature. The question, therefore, is whether the Surrogate acted in excess of his powers by inquiring into the contents of the account and the amount of the attorney’s fee submitted to him before approving the petition for a final accounting when the interested parties to the proceedings had raised no objection to those matters and had consented to entry of a decree.
 

 
 *524
 
 A.
 

 The Surrogate’s Court, as a court of limited jurisdiction, may exercise only the powers conferred upon it by statute and those powers incidental, inherent or necessary to do justice in a particular case to which its jurisdiction extends
 
 (see, Riggs v Cragg,
 
 89 NY 479, 490). Turning first to the statutes, the provisions of the Surrogate’s Court Procedure Act implicitly grant the Surrogate broad discretionary powers. It provides that the court shall "exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents” (SCPA 201 [3]). The powers incidental to those broadly granted are enumerated in section 209 which also provides that the itemized incidental powers are not exclusive (SCPA 209 [11]). Notably, the statute provides that the ultimate settlement of an account, whether compelled or voluntary, is to be accomplished by the Surrogate and that the court shall "make such order or decree as justice shall require” (SCPA 2206 [3]; 2211 [!])•
 

 When an application for voluntary settlement of a judicial account is submitted, SCPA 2211 (1) directs the court to: (1) take the account submitted by the fiduciary; (2) hear the proofs of the interested parties; and, as noted, (3) settle the account as justice requires. It does not expressly authorize the Surrogate to withhold judicial approval absent objections by interested parties, nor does it forbid the Surrogate from making an inquiry into account matters before decreeing settlement. However, to require the Surrogate to "rubber stamp” the account because the parties do not object to it would vitiate the third statutory directive — that the Surrogate administer justice in settling the accounts. Indeed, it would seem self-evident that if a Surrogate acts judicially in approving an account and may not be compelled to enter a decree, then the court must have the correlative power to deny a decree or, when inquiry is warranted, to satisfy itself on questions arising during the proceedings. As we said long ago: "The general jurisdiction conferred upon the Surrogate’s Court, in matters relating to the conduct of executors and administrators, would seem meaningless, if not an absurdity, if it did not comprehend the right to decree intelligently, and upon equitable principles, and to order their conduct upon principles of justice and of reason”
 
 (Matter of Wagner,
 
 119 NY 28, 31,
 
 supra).
 
 The parties in this case sought judicial, rather
 
 *525
 
 than private, settlement of the executor’s accounting and they cannot complain that the Surrogate sought to be fully informed in the premises before exercising his judicial discretion.
 

 Thus, we conclude that the Surrogate’s power to initiate an examination of the items on an account before approving them is reasonably to be implied from the Constitution, the statutes and the case law. A Surrogate need not inquire when all parties have consented but he or she is not foreclosed from doing so if the circumstances indicate the need for an inquiry.
 

 The Appellate Division, in affirming prohibition, cited two of its prior decisions,
 
 Matter of Dolan
 
 (176 AD2d 1019) and
 
 Matter of Veccio
 
 (49 AD2d 380), both of which expansively apply our decision in
 
 Matter of De Vany
 
 (205 NY 591,
 
 revg
 
 147 App Div 494).
 
 De Vany
 
 did not directly address whether the Surrogate could
 
 sua sponte
 
 conduct inquiries on the matters in the final account, but held only that where a legatee had given a portion of her legacy to the executor, and signed a release for the legacy, the Surrogate erred in surcharging the executor for that sum because (1) the legatee did not object to the executor’s receipt of the funds (apparently intending a gift) and (2) the funds would not in any event become a part of the residuary estate. The decision holds only that the surcharge was improper on the facts presented; it does not stand for the broad proposition, urged upon this Court by petitioner and
 
 amicus,
 
 that the Surrogate
 
 must
 
 settle an executor’s accounts without inquiry where all interested parties have waived citation and consented to the settlement.
 

 B.
 

 Similarly, neither the Surrogate’s Court Procedure Act nor the Uniform Rules for Trial Courts expressly confer authority on the Surrogate to review the attorney’s fees when all parties have knowingly consented to payment of the requested fee
 
 (cf.,
 
 SCPA 2307; 22 NYCRR 207.45 [b]). Nonetheless, Surrogate’s Court is authorized to exercise "all of the powers that the supreme court would have in like actions and proceedings” (SCPA 209 [10];
 
 see generally,
 
 Siegel and Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 58A, SCPA 209, at 182-183), and it is well established that Supreme Court has inherent power to supervise the fees attorneys charge for legal services
 
 (see, Matter of First Natl. Bank v Brower,
 
 42 NY2d 471, 474;
 
 Gair v Peck,
 
 6 NY2d 97;
 
 see
 
 
 *526
 

 also, Matter of Freeman,
 
 34 NY2d 1, 10). Accordingly, we conclude the Surrogate had the authority to inquire into the reasonableness of counsel’s fee even though agreed upon by the executor and assented to by the beneficiaries.
 

 III
 

 Confirming for the first time the Surrogate’s power to initiate such inquiries
 
 sua sponte,
 
 we recognize the potential dangers of Surrogates doing so, particularly in cases such as this which appear to be free of any hint of fraud or concealment. A. Surrogate’s actions in uncontested matters can cause the estate and its beneficiaries unnecessary expense and delay which they are remediless to prevent. Moreover, such inquiries may seriously damage the reputation of the attorney or executor involved by creating unwarranted suspicions of overreaching or misconduct. Indeed, the appearance of meddling may diminish the dignity of the court itself. Our recitation of these dangers should serve as a caution to Surrogates generally, that though they do not act in excess of their powers by inquiring into the contents of a settlement petition or the attorney’s fees charged an estate, they must be sensitive to the prejudice which may accompany unnecessary hearings.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by dismissing the petition in its entirety, and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order modified, etc.
 

 *
 

 In this Court petitioner has abandoned its application for mandamus, apparently recognizing that mandamus may issue only to compel a ministerial act, not the exercise of judicial discretion
 
 (see, Matter of Brusco v Braun,
 
 84 NY2d 674) and that even when no objections are made to the account a court acts judicially, not ministerially, in approving a petition for final settlement of an executor’s accounts
 
 (see, Matter of Wagner,
 
 119 NY 28, 31-32;
 
 Wigand v Dejonge,
 
 8 Abb NC 260).